Isaac A. Stewart, *Plaintiff in Error*, v. James D. Beggs, *Defendant in Error*.

1. When within the time set for the issuance of depositions full cross interrogatories are filed, objections to the issuance upon the ground of absence from the State of the party, which lie dormant until the case is called for trial, may be overruled.

2. In determining a reasonable fee to be allowed an attorney, suing on a *quantum meruit*, the beneficial results to the client of the attorney's services are proper to be considered.

3. The finding of a party, an attorney, in the presence of the jury, for contempt of court, will not for that reason cause reversal, when the attorney's conduct was very aggravating and the jury's verdict showed that no prejudice was thereby created.

4. When the verdict of a jury awarding an attorney's fee for professional services, accords not only with the overwhelming weight of the evidence, but also with the court's own knowledge and experience in such matters, an affirmative charge will not be held error, though there may be some slight evidence to the contrary.

This case was decided by Division A.

Writ of Error to the Circuit Court for Volusia County.

The facts in the case are stated in the opinion of the court.

*E. Bly,* for plaintiff in error;

*Massey & Warlow,* for defendant in error.

Cockrell, J.—In an action upon a *quantum meruit* for an attorney's fee, the defendant in error as plaintiff below obtained a verdict and judgment in the sum of five hundred dollars.

The case out of which this action arose was that of Stewart against E. E. Ropes in the same court for malicious prosecution; though that case was contested, the jury awarded the plaintiff therein the sum of eight thousand dollars as damages, the full amount claimed, upon which verdict judgment was pronounced and the full amount made upon execution. Mr. Beggs was not employed until the issues were made up, but alone examined the witnesses and alone addressed the jury, and after verdict rendered secured the judgment to be entered thereon. He did not, however, participate in the abortive attempt to appeal that case nor in suing out the execution or at any subsequent stage.

There are forty-nine assignments of error filed here, all based upon matters *in pais* embraced in the bill of exceptions.

The first assignment is based upon the refusal to suppress certain depositions, which it is claimed were issued upon sufficient notice. Four days' notice was given of interrogatories to prominent members of the bar of this State upon the matter of the proper fee to be charged, and upon the fourth day, Egford Bly, the law partner of and attorney upon the record for, Isaac A. Stewart, filed objections to the issuance of the interrogatories and also filed cross-interrogatories which were answered. Upon the day of the trial the court was moved to suppress the depositions and in support it was urged that Stewart himself was, at the time of the receipt of the notice at his office, in the State of Georgia, and that he had no opportunity to examine the interrogatories or to file cross-interrogatories. It appears that Stewart was at once advised by telegram of the receipt of the notice and no attempt was made to excuse the delay in bringing on the motion for hearing, the cross-interrogatories that

were filed seem full and carefully prepared by Judge Stewart's law partner whose comparative ability was known to the trial judge and we find no violation of any rule of law in the refusal to suppress.

Many assignments are predicated upon the theory that the amount of an attorney's fee is to be fixed wholly irrespective of the results to the client, and that it was immaterial whether the client secured one dollar or eight thousand dollars through his attorney's skill and labor. This we do not conceive to be the law.

The plaintiff in error relies upon certain expressions in Weeks on Attorneys at Law, but the author cannot be held to the view. He does say that the client takes the chance of war, but he is there discussing the idea that an attorney will be entitled to a fee, even though no beneficial results flow to his client, provided the loss be not due to the attorney's negligence; the converse of the proposition does not logically follow, however, and Mr. Weeks on page 699 cites with apparent approval from the case of Lombard v. Bayard, 1 Wall. Jr. 207, the following: "Hence in all cases professional compensation is gauged not so much by the amount of the labor, as by the amount in controversy, the ability of the party, and the result of the effort."

Not only was it the experience of each member of the court while at the bar, but it is in accordance with what we gather to be the uniform authority in this country that the beneficial results to the client are an important element in determining the value of the attorney's services. The adjudged cases will be found cited in 3 Am. & Eng. Ency. Law (2nd ed.) 423, n. 2; 4 Cyc. 1004. This court apparently approved the rule in Young v. Whitney, 18 Fla. 54. In enumerating bases upon which to justify the judgment for an attorney's fee there ob-

tained, is stated the fact that a judgment against a responsible person for several hundred dollars had been secured by the attorney's efforts.

There was no proof upon which the issue raised upon the third plea might be submitted to the jury. This plea in abatement was upon the theory that the firm of Beggs & Palmer should have brought the action. Upon the evidence it is clear that Beggs individually was employed and that W. L. Palmer, with whom Judge Beggs had a loose kind of partnership, had no interest in the fee. Weeks on Attorneys, p. 673.

During the progress of the trial the court saw fit, in support of its dignity, to impose a fine of twenty-five dollars upon the plaintiff in error, for contempt of court in persisting in a forbidden line of cross-examination and instructed the sheriff to collect the fine during the recess of the court. It is urged that such a rebuke in the presence of the jury was prejudicial, and that the court should have permitted an offered explanation. While it may be well to have the jury retire when practicable to avoid unduly prejudicing them, yet when a party needlessly and persistently aggravates and exasperates the judge beyond endurance, the consequences should be laid upon his shoulders rather than upon those of the innocent party. The objectionable question was so wholly beyond all legitimate bounds that it could not have been asked in good faith after less objectionable questions along the same line had been repeatedly refused, and we can not give our sanction or encouragement to such methods of conducting a cause in a court of justice. Moreover we are of the opinion that the jury's verdict shows that no prejudice resulted.

In the face of a plea of tender of seventy-five dollars, coupled with the averment that this was a reasonable fee,

the court instructed the jury to find for the plaintiff, and upon the measure of damages charged them to "take into consideration the amount of the recovery and the professional standing, experience and skill of the plaintiff as shown by the evidence as well as the work actually done by him. The objection urged to this measure of damages is that it took into account the amount of the recovery; we have heretofore disposed of this objection.

It is further insisted that there was evidence to sustain the plea of tender, and that therefore a peremptory instruction to find for the plaintiff was calculated to invade the province of the jury.

Mr. Bly did testify that fifty dollars would be a reasonable fee, but this amount was based upon the erroneous assumption that the amount of the recovery as the result of the attorney's efforts was not to be considered. There was another witness who described himself as a "lawyer and farmer" who thought seventy-five or a hundred dollars would suffice; he based his opinion upon the statement of the facts as testified by the defendant, and upon a partial attendance upon the trial for malicious prosecution, and upon his opinion that the large verdict was due to the personality of the plaintiff, rather than to the efforts of his attorney.

We cannot close our eyes to the personal knowledge acquired by the experience at the bar which has been the lot of all who have been elevated to this bench, and must refuse to interfere lightly with a verdict that accords so nearly with that knowledge and experience. The overwhelming weight of the evidence from attorneys of large experience and intimate personal knowledge of the skill, ability and standing at the bar of Judge Beggs place a proper fee for the services here rendered at considerable more than the amount found by the jury. An action for

malicious prosecution depends for its result peculiarly upon the skill of the attorney in the handling of the evidence and the impression he may make upon the jury; the pleadings being comparatively simple. A verdict for the defendant or even mere nominal damages for the plaintiff, who held a judicial office of high dignity, would have been a serious reflection upon his standing both as judge and attorney at law, and the amount of the verdict is largely within the uncontrollable discretion of the jury and the trial court. The amount of the fee awarded is a modest one, no errors prejudicial to the plaintiff in error appear to have been committed and upon the admissions before us a verdict for a lesser amount should not be permitted to stand. We shall not therefore enter more minutely into the other assignments, but upon what has been said affirm the judgment.

It is so ordered.

SHACKLEFORD, C. J., and WHITFIELD, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.