F. L. STITT & COMPANY, A CORPORATION, *Plaintiff in Error.* v. GEORGE M. POWELL, *Defendant in Error.*

Opinion Filed August 1, 1927.

Petition for Rehearing Denied October 13, 1927.

*Crawford & May,* for Plaintiff in Error;

*John W. Dodge* and *George M. Powell,* for Defendant in Error.

CAMPBELL, Circuit Judge.—The defendant in error, as plaintiff in the court below, sued the plaintiff in error, as defendant, for certain amounts which it was alleged were due the plaintiff by the defendant.

For convenience, we shall in this opinion refer to the defendant in error as plaintiff, and to the plaintiff in error as defendant.

The suit was brought by the plaintiff for sums claimed to be due him as attorney's fees, amounting to $36,506.00, for services rendered by him in his capacity as an attorney-at-law for the defendant, at his request. The declaration contains a count for the amount above stated as money payable by the defendant to the plaintiff "for legal services as an attorney-at-law done and rendered by said plaintiff for said defendant at its request," and also several common counts.

The defendant filed two pleas to the declaration, the first denies the indebtedness, and the second is a plea of payment.

Upon the trial of the issues in the court below there was a verdict for the plaintiff for the full amount claimed, and a judgment was entered thereon against the defendant.

From this judgment the defendant sued out a writ of error, and assigns four errors in the rulings of the court below.

In the first error assigned it is claimed that the court erred in overruling the defendant's objections to the testimony as to the price at which the property was sold, after the services were rendered.

The counsel for the plaintiff in error have not, in their brief or oral argument, pointed out the specific objections upon which they rely; nor do they specify the witness or witnesses that were permitted to testify over their objections.

In the brief it is claimed that the thirteenth ground of the motion for new trial raises this question. Referring to the motion for new trial, as copied in the record, the thirteenth ground thereof is found to read as follows: "The court erred in admitting in evidence over the objection of the defendant, the testimony of the plaintiff as to the price for which the property involved was sold by the defendant."

We, therefore, infer that the first assignment of error is directed at the overruling of objections to questions propounded to the plaintiff relative to the sale price of the property involved. Because of the vagueness and indefiniteness of this assignment, as also the reference thereto in the brief, we might decline to consider it. (See J. T. & K. W. Ry. Co. v. Griffin, 33 Fla. —, 15 South. Rep. 336.) However, diregarding this defect in the assignment and its presentation in the brief, we will undertake to pass upon the question involved.

It appears from the record that the plaintiff, in his

capacity as an attorney-at-law, at the request of the defendant, rendered professional services for it in connection with securing a legal title to certain valuable real estate, and that, as a result of such services, a legal title to the property was secured, the property purchased by the defendant, and shortly thereafter sold for $750,000.00. It also appears that in the course of the plaintiff's employment in this particular matter, which apparently extended over several months, he assisted in negotiating the deal, in the settlement or adjustment of certain suits in which the property was involved, and in securing the release of the property from other apparent claims and liens.

There appears to have been no express agreement between the parties as to the amount plaintiff was to receive as compensation for his services. In other words, there was no express contract for the payment of a fixed fee. The record, however, does disclose that the defendant employed the plaintiff as its attorney and used his services for several months, in its negotiations for the purchase of and securing a legal title to the property, and subsequently in selling the property for a very substantial profit.

Under these circumstances, the law implied a contract upon the defendant's part to pay the plaintiff a reasonable attorney fee. McGill v. Cockrell, 88 Fla. 54, 101 South. Rep. 199; 6 C. J., p. 748, par. 331. It was necessary, therefore, that the jury should determine the amount the plaintiff was entitled to recover as a reasonable attorney fee.

In determining what is a reasonable fee to be paid an attorney as compensation for his services for which he is employed, many matters are taken into consideration, one of which is the result secured through the services of such attorney. Stewart v. Beggs, 56 Fla. 567, 47 South. Rep. 932; 6 C. J., p. 751, par. 331; 2 R. C. L., p. 1059, par. 145.

"In determining a reasonable fee to be allowed an attorney on a *quantum meruit,* the beneficial results to the client, of the attorney's services, are proper to consider." Stewart v. Beggs, *supra.*

It is contended by the plaintiff in error that the court below erred in permitting the plaintiff to testify as to the amount for which the defendant sold the property in question, because the plaintiff had, when demanding his fees, wired the defendant that his services had been completed in July, 1925, the property not having been sold until October, 1925. It is true that on October 26, 1925, after the defendant had failed to pay the bill rendered it by the plaintiff for his services, he, the plaintiff, wired the defendant, referring to the fact that his services were completed before July 1. However, the testimony as a whole shows that the professional services of the plaintiff to the defendant concerning the "Lake Osborne Lands" continued up to and including the middle of October, 1925. On October 7 a letter was written by the vice-president, the apparent manager of the defendant company, to the plaintiff, enclosing a copy of a deed, for his examination and approval, that was to be executed by F. L. Stitt and Company to Ree-Boy Company, for the "Lake Osborne Lands." On October 10 the plaintiff wrote the defendant, acknowleding receipts of the "papers by which it is proposed to transfer the title to the Lake Osborne property from F. L. Stitt and Company to the Ree-Boy Company. In that letter he gives his opinion on the matter. He further says, after commenting on an arrangement agreed to by the Palm Beach Company, "but I am representing Stitt & Company and hence, it is sufficient if they are protected and I believe they are." On October 13 the plaintiff wired the defendant "What is the news in the Lake Osborne matter?" On the same day defendant replied by wire as follows:

"Closed, wrote you yesterday. Stop. No word from Thomas."

It clearly appears, therefore, that the plaintiff's services continued until the consummation of the sale of the Lake Osborne lands by Stitt and Company. There is no merit, therefore, in the contention that the services of the plaintiff were completed before the sale of the property, and that the testimony as to the sale price of the property was improper. As we have already said, the beneficial result secured through the services of an attorney is a circumstance to be considered in ascertaining what his compensation should be. The court below did not err in admitting evidence as to the amount for which the property involved sold, as it tended to show the beneficial results of plaintiff's services.

The plaintiff in error has not, in its brief or oral argument, urged the second assignment of error, and it will, therefore, be treated as abandoned. Harris v. State, 72 Fla. 128, 72 South. Rep .522. McKinnon v. Lewis, 60 Fla. 125, 53 South. Rep. 940. So. Express Co. v. VanMeter, 17 Fla. 783.

Under the third assignment of error it is contended that the court erred in denying defendant's motion for a new trial.

In the motion for new trial objections were made to separate portions of the instructions given by the court, and also to the refusal of the court to give certain instructions requested by the defendant. Therefore, in considering the third assignment of error, our attention will be first directed to those grounds of the motion for new trial which question the instructions given by the court, and its refusal to give charges requested by the defendant.

The court below, in its charge to the jury instructing them what circumstances might be considered in determin-

ing the compensation to be allowed the plaintiff, charged that they might take into consideration "the amount and character of the legal service rendered by the plaintiff, the nature and the importance of any litigation involved in connection therewith, and the nature and importance of the business in which the services of the plaintiff were rendered; the responsibility imposed upon the plaintiff as an attorney as to the business and services for which he was employed and for which he rendered service; the amount of the money or the value of the property which was affected or involved in connection with the legal services and employment of the plaintiff; the skill and experience which were called for on the part of the plaintiff as an attorney in the performance of any legal services which he rendered; the professional character and standing of the plaintiff as an attorney; the results which were finally secured in connection with the business and services rendered by the plaintiff; and whether or not the fee to be paid to the plaintiff by the defendant was an absolute or contingent fee, it being a recognized rule of law that an attorney may properly charge a much larger fee when the same is to be contingent than when it is not."

The sixth ground of the motion for new trial questions, or excepts to, that part of the above quoted instruction which charged the jury that they might, in determining the amount of plaintiff's compensation, consider "the nature and importance of any litigation involved in connection therewith."

It is contended by the plaintiff in error that this portion of the court's charge was erroneous, because the plaintiff did not appear in any litigation, and that no litigation was necessary to be resorted to in the whole course of the plaintiff's employment.

While the record does not show that any suit at law or in equity was actually instituted for the defendant by the plaintiff, nor that he appeared as attorney of record for the defendant in any such suit, yet it does appear from the evidence that there were, at the time of the plaintiff's employment, suits pending involving the property defendant was seeking to purchase, and that there was other threatened litigation, all of which tended to jeopardize the defendant's possibilities of acquiring good and sufficient title to the property, or enforcing the contract which it held for the purchase thereof. In the course of plaintiff's employment, it appears that he advised in and piloted the pending litigation, prevented or forestalled other threatened litigation, and so advised, managed and controlled affairs as to prevent the successful foreclosure of mortgages, and avoid the necessity of bringing a suit to enforce the contract of the defendant. The litigation pending and that threatened, or in prospect, would have involved some vexing questions, and the disposal of pending causes and prevention of further litigation were of vital importance to the defendant.

It is the law that the nature and importance of the litigation or business in which the services of any attorney are rendered, is a circumstance to be considered in finding the compensation to be paid such attorney. 6 C. J., p. 751. The court below, therefore, did not err in the charge complained of in the sixth ground of the motion for new trial.

Another instruction brought in question in the motion for new trial was the following: ''The court erred in charging that the jury in fixing the attorney's compensation, might consider the results that were finally secured in connection with the business or services rendered by the plaintiff.'' What we have had to say in our consideration of the first assignment of error disposes of this objection to the instruction of the court, and it follows that there

was no error committed by the court in this portion of its charge.

Another portion of the court's charge as to what might be considered in fixing the compensation of the plaintiff for his services, objected to by the defendant in its motion for new trial, is as follows: "whether or not the fee to be paid to the plaintiff by the defendant was an absolute or a contingent fee, it being a well recognized rule of law that an attorney may properly charge a much larger fee when the same is to be contingent than when it is not."

The charge objected to states a correct proposition of law. See 6 C. J., p. 752, par. 331.

In the instant case there was evidence before the jury to warrant the court in incorporating in its charge this proposition of law. The record before us discloses that the property the defendant was seeking to secure was very valuable. If it could secure the property with a clear title, it would be a most valuable acquisition. The professional services of the plaintiff were enlisted in negotiating the deal and in procuring a clear title to the property. There was nothing said at the time of this employment as to what compensation the plaintiff was to receive for his services, and, as we have already said, the law implied a contract to pay such reasonable compensation as the circumstances warranted. There was evidence before the jury that in January, 1925, the incorporators of the defendant company borrowed $10,000.00, the amount required to be paid in before beginning business as a corporation. The evidence further shows that the vice-president of the company, shortly after this, wrote the plaintiff that the company was "curb broke." The proposition of acquiring this property and the employment of the plaintiff arose soon after the incorporation of the company. There was evidence which tended to show that, unless the defendant was successful in

securing the property, it would not have been able to have paid the plaintiff a fee commensurate with the ability, labor and skill involved in his employment, and the value of the property involved. There was necessarily, therefore, an element of contingency entering into the matter of attorney fee. If success crowned the efforts of the attorney, the defendant would be able to pay a fee in keeping with the nature and importance of the matter, and the ability, experience and skill of the plaintiff, but if the services proved fruitless, there was a probability that the defendant could not pay a fee at all in keeping with the magnitude of this proposition and the work involved. There was, in our opinion, sufficient evidence before the jury to warrant the charge complained of in the eighth ground of the motion for a new trial.

The plaintiff, in its bill of particulars, claimed, and offered testimony before the jury relative to an item of $10,000.00 additional compensation over and above a reasonable fee.

The court below, in charging the jury relative to this item, instructed the jury as follows: ''As to the second element of the plaintiff's claim, that is to say, the sum of $10,000.00 which plaintiff claims was agreed to be paid to him by the defendant in addition to reasonable compensation, for the services rendered by him in the event of the successful outcome of the matter in question, the court charges you, that if you find from the evidence that any officer, agent or representative of the said defendant did agree on behalf of the defendant to pay such sum or any sum to the plaintiff in addition to reasonable or other compensation for his services, and that such officer, agent or representative of the said defendant was authorized to so agree, or was held out by the defendant to the plaintiff as one who was authorized to deal with and make such an

agreement with the plaintiff, or that either at the time or after the making of said agreement the fact that it had been made was known to the other officers of the defendant corporation and that they made no objection thereto; then, and in either such event, it will be your duty to find for the plaintiff as to such second element of his claim, and to assess the demages as to such element of his claim at such sum as you find from the evidence was so agreed by the defendant, or on its behalf as aforesaid, should be so paid to the plaintiff, and to include in your verdict such sum as you so find.''

As to this second item of $10,000.00 claimed by the plaintiff, the defendant requested the court to give the following instruction, which was refused, to-wit: ''In reference to the item of $10,000.00 alleged by the plaintiff to have been promised by Mr. McCarthy payable in American Express Company's travelers' checks, the court charges you that as a matter of law, the plaintiff is not entitled to recover said sum, and you will therefore in arriving at your verdict, exclude that item from consideration.''

The giving of the instruction quoted as to this item, and the refusal to give the one requested by defendant relative thereto, are questioned under the eleventh and twelfth grounds of the motion for new trial.

In the bill of particulars attached to the plaintiff's declaration, he claims, in addition to the item of $45,000.00 (the amount claimed as reasonable compensation) another item as follows, to-wit: ''To agreed additional compensation $10,000.00 American Express Company's travelers' checks.''

It appears from the testimony that in the month of February, 1925, the professional services of the plaintiff for the defendant in connection with the ''Osborne Lands'' began. The vice-president, and manager of the defendant,

at that time produced a copy of what was termed the "Jones Contract" for the lands, and asked the plaintiff what he thought the chances were, under this contract, stating that he, for the defendant, could procure an assignment of this contract from the Lake Osborne Syndicate. It was with reference to this contract—what it was worth as a contract, and the rights under it to the Lake Osborne property, and the question of working it out—that the plaintiff was first approached by the representative of the defendant. It appears that in April, 1925, an abstract of title to the property was delivered by the defendant to the plaintiff for the purpose of examination, and at the same time a copy of the "Jones Contract," which was assigned to the defendant. In the letter enclosing these documents, the writer said to the plaintiff, "Your ultimatum on this will be the deciding factor * * * some haste may be necessary because of foreclosure proceedings."

It further appears that no express agreement was made between the plaintiff and the defendant relative to fees, each party apparently knowing a reasonable fee or compensation was implied under the law. Therefore, there was, under the law, an implied contract upon the defendant's part to pay a reasonable attorney's fee to the plaintiff for his services.

On a day subsequent to the employment of the plaintiff by the defendant, and after the relationship of attorney and client had been created between them in reference to the "Lake Osborne land," it appears that there was a conference between the plaintiff and the vice-president and secretary of this defendant corporation, when they were taking lunch at the Seminole Hotel in Jacksonville. At that time they were discussing the "large possibilities" to be found in the business before them, that is, securing the "Lake Osborne" tract, also the difficulties confronting

them in getting the title thereto. The plaintiff says that in this conference he remarked, "Well, we will do the best we can with it, and if we don't get that property, we will keep them from selling it to somebody else," and that thereupon Mr. McCarthy, the vice-president and manager of the defendant, spoke up and said, "If you put this thing through I'll give you in addition to your fees, Ten Thousand Dollars worth of American Express Company travelers' checks, so you and Mrs. Powell can take a trip to Europe."

Mr. James T. McCarthy, who apparently had entire control of the matter for the defendant, testified with reference to this conversation at the Seminole Hotel. He said in his testimony: "What I said was, 'if we make this stick,' 'If we make this stick' 'not you' 'we,' I will give you Ten Thousand Dollars payable in American Express Company's travelers' checks, for you to take a trip to Europe.' Wasn't any *conversation* (evidently meaning consideration) about it; it was a gratuity; it was an expression of good will to Mr. Powell. That is what it was. There is no reason for me to increase Mr. Powell's compensation."

The above quoted portion of testimony was the basis for the instruction of the court concerning the $10,000.00 item and its refusal to give the special instruction relative thereto requested by the defendant.

This alleged promise of additional compensation was made after the services of the plaintiff for the defendant had begun under the implied contract for reasonable compensation. It is admitted by the plaintiff in his testimony that Ten Thousand Dollars in American Express Company's travelers' checks was to be in addition to a reasonable fee. There is no evidence that any additional legal work or advice was to be rendered for this additional promise. Even if the promise of the vice-president was made

in behalf of and with the authority of the defendant, express or implied, it was a promise without consideration. There was already a subsisting contract between the alleged promisor and promisee for the performance of the professional services upon the one hand, and the payment of reasonable compensation on the other.

"The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit. Thus a promise to pay additional compensation for the performance by the promisee of a contract which the promisee is already under obligation to the promisor to perform is without consideration. 13 C. J., p. 353, par. 209.

"The rule holding a person in a fiduciary capacity to the strictest accountability applies to agreements for increased compensation after the confidenial relationship is commenced. Such an agreement, no additional services by the attorney being contemplated, is, in the absence of peculiar facts, without consideration and invalid." 6 C. J., p. 737, par. 311; Marshall v. Dossett, 57 Ark. 93, 20 S. W. Rep. 810; Kahle v. Plummer (Tex. Civ. App.) 74 S. W. Rep. 786.

In the case of Marshall v. Dossett, *supra,* the Supreme Court of Arkansas said: "An attorney who has agreed to defend a prisoner confined in jail for a stipulated fee, which was duly paid him, afterward, and while the relationship of attorney and client continued, received from the client a promise to give him a mule in case the attorney succeeded in securing an acquittal. The client was acquitted, but did not deliver the mule: Held, in an action for replevin for the mule, that the executory promise conferred no title on the attorney."

In the text of the opinion in the Marshall v. Dossett case, the Arkansas court, on page 811, 20 S. W. Rep., says: "An attorney, who had agreed to defend a prisoner confined in jail, for a stipulated fee, afterward and while the relation of attorney and client subsisted, accepted a promise from the client to confer upon him a gratuity, in the form of a mule, in case the attorney succeeded in restoring him to liberty. Such is the jealousy with which courts guard transactions between attorney and client, while that relation exists, that the authorities agree that if the gift has been executed by delivery, when the promise was made under the case found, the client could have revoked it. (Week's Attorneys, par. 364; I Bigelow Frauds, 265; Lecatt v. State, 3 Port. (Ala.) 115.)

"But the promise to make the gift in this case was not executed. The promise to make the gift of chattels, irrespective of the relationship of attorney and client, confers no title or right of possession to the property promsed, *and affords no remedy against the promisor, by replevin or otherwise.*" (Italics supplied.)

The promise of the $10,000.00 in American Express Company's travelers' checks, was without consideration moving from the plaintiff. He was already obligated to serve the defendant to the best of his ability as an attorney, under the implied contract for a reasonable fee. Therefore, the promise was not a binding obligation upon the defendant.

The promise was, by its very wording, a gift or a gratuity, and it was to be used for a particular purpose. According to the plaintiff's own testimony, the representative of the defendant said, "I'll *give* you *in addition to your fees,* ten thousand dollars in American Express Company's travelers' checks, so that you and *Mrs. Powell can take a trip to Europe.*"

To give, as used in the above quoted statement, means

"to transfer the possession or title of, to another, without an equivalent or compensation; bestow gratuitously." In other words, it was to be a present or a donation. Compensation was not in mind,—it was to be "in addition" to compensation.

The proffer, then, to give ten thousand dollars in American Express Company's travelers' checks being only as a gift, it constituted no actionable obligation upon the part of the defendant, and the court erred in submitting this element of plaintiff's claim to the jury, in the instruction objected to in the eleventh ground of the motion for new trial.

For the same reason the court erred in its refusal to give the instruction requested by the defendant, exception to which is taken in the twelfth ground of the motion for new trial.

The only remaining grounds of the motion for new trial that are left for our consideration under the third assignment of error, are those which question the sufficiency of the evidence to sustain the verdict of the jury, and one which claims that the verdict of the jury was excessive.

The attorneys for the plaintiff in error earnestly contend that the evidence does not sustain the verdict. We have read the entire testimony. As we have said several times in this opinion, the plaintiff was, under the circumstances in the case, entitled to reasonable compensation.

The record shows that the plaintiff was, and is an attorney of good character and of marked ability, experience and skill. He was called in his capacity as such attorney to serve the defendant in a matter of great importance to it. Of such importance was it that if favorable results ensued, the defendant would come into what might be termed a "small fortune"; and if the results were unfavorable to the defendant, it would practically have nothing.

There were many questions to be considered in passing upon the abstracts. Several complications seem to have arisen during the negotiations, and others were anticipated and feared. The record, as a whole, indicates that the plaintiff not only spent much time and labor, but also brought to bear all his personality, ability, experience and skill in securing for his client the valuable property it was seeking. The property acquired brought to the defendant $750,000.00, with a comparatively small outlay of money. It made a profit approximating $450,000.00. Reputable members of the bar testified that, in their opinion, $45,-000.00 would be a reasonable fee for the plaintiff's services. The jury heard all the evidence and reached a verdict which fixed the fee to be allowed at $45,000.00.

We cannot say that there was no evidence to sustain such a finding, nor that this finding is not supported by the evidence. However, the jury also found that the plaintiff was entitled to recover the additional $10,000.00, which we have referred to in considering the charge to the court. In our consideration of the court's instruction to the jury, with reference to this ten-thousand-dollar item, and also in considering its refusal to charge the jury, at the request of the defendant, that this item should be eliminated from their consideration, we discussed the evidence bearing upon this element of the plaintiff's claim, and from what we have said in that discussion, it follows that the jury were not warranted, under the evidence, in including the amount of this item in its verdict.

If the defendant in error, within thirty days after the mandate of this Court in this cause is filed in the court below, shall enter a remittitur of the sum of $10,000.00 from the judgment, as of the date of its rendition in the circuit court, the residue of such judgment, amounting to $26,506.04, shall stand affirmed; otherwise, the entire judg-

ment of the circuit court shall stand reversed and a new trial ordered.

ELLIS, C. J., AND WHITFIELD AND BUFORD, J. J., concur.

TERRELL AND STRUM, J. J., did not participate.

BROWN, J., disqualified.

### ON PETITION FOR REHEARING.

PER CURIAM.—The oral argument in this cause was heard en banc by three members of the Court and by Circuit Judge Campbell who sat as a member of this Court in the place of Mr Justice BROWN, disqualified.

The opinion was prepared by Judge Campbell and concurred in by three Justices of the Court, making, with Judge Campbell who sat in the place of Mr. Justice BROWN, a majority of the Court.

Two of the Justices of the Court did not participate in the consideration of the opinion when filed because of the press of other matters then being considered by them incident to the recess adjournment the day the opinion was filed. The procedure in filing the opinion in the cause accords with the requirements of the Constitution and the statutes on the subject. See Secs. 4 and 6, Art. V, Constitution; Sec. 2959, Rev. Gen. Statutes, Chapter 12323, Acts of 1927.

The Court did not overlook any of the matters stated in the petition for rehearing. The judgment rendered here is in accordance with the law applicable to the matters set forth in the transcript of the record.

Rehearing denied.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM AND BUFORD, J. J., concur.