### RASSNER, et al v. BERG, et al.
No. 60-1774.

Civil Court of Record, Dade County.

August 5, 1960.

---

Rassner, Miller & Roth, Miami, for plaintiffs.

Norman B. Miles, Miami, for defendant Marlene Berg.

Gershon Miller, in pro per., defendant and cross-plaintiff.

HAL P. DEKLE, Judge.

This cause is submitted on stipulation of facts for determination on summary judgment. Plaintiff law partnership initiated the cause in the circuit court in the nature of an "interpleader" suit and tendered an amount in controversy between the client-

defendant, Marlene Berg, and the referring attorney-defendant, Gershon Miller. In 1956, Mrs. Berg's father, Dr. Burton Solar, to whom defendant Miller also refers in his correspondence with him as "an attorney, as well", retained Miller in a personal injury case arising out of an accident in which his daughter was injured. Miller's initial letter to Dr. Solar referred to a forwarding fee to which Dr. Solar would be entitled "as an attorney". Miller spelled out a contingent fee of 22% net to himself, which he subsequently "rounded out" to a "straight 20% basis" and stated in his letter thereon to Dr. Solar of June 26, 1956, that "This would be regardless of whether or not it went into litigation".

Miller proceeded to perform under such arrangement, but on November 22, 1957, some year and a half later, Miller again wrote Dr. Solar pointing out that his daughter's case involved "quite a bit of conflict and medical testimony and it, therefore, occurs to me that her best interest would be served by a firm of attorneys who specialize in such matters" and mentioning plaintiff-partnership as such recommended attorneys, saying that they "suggested I send you my regular fees form which is different from the one agreed upon, which unfortunately is unsatisfactory to him. You understand that I will now be giving up most of my fee to secure their services . . . . Accordingly, please send both of the enclosed retainer forms" — apparently providing for 40% attorney's fee on settlement without litigation and 50% with litigation — "to your daughter in Texas and ask her and her husband" — she having now married — "to sign on the lines indicated and to retain the copy for their own record and return the original to me. The firm is ready to file suit and is just waiting for my assurance that this case is handled on a regular fee schedule before going ahead."

There was never any reply from Dr. Solar, nor from the Bergs, nor were the retainer forms ever returned, but the Rassner partnership apparently filed suit and thereafter negotiated a settlement for $4,500, from which they retained $1,500 as a contingent attorney's fee of 33 1/3%, apparently arbitrarily applied by them from the schedule of minimum fees of the Dade County Bar Association.

Mrs. Berg's counterclaim and crossclaim seek recovery of $600 held by plaintiff, asserting that the original 20% contingent fee — now becoming $900 and retained by plaintiff — is the only binding contract to which she can be held. I agree.

It is admitted that 20% was the initial contract. Under the circumstances plaintiff became nothing more than defendant Miller's agent and bound by this contract. They did not wait for a reply or the new retainer form requested by them, nor ever establish an independent relationship with the client. There appears to be no consideration as a basis for the contended for "new contract". Miller has done nothing but what he was expressly bound to do by the original contract, which it will be remembered included "regardless of whether or not it went into litigation". Miller chose to refer it for such litigation and did so at his own risk when he did not wait for nor insist upon the acceptance of the new terms and execution and return of the new retainer form which constituted his offer in the last letter of November 22, 1957. Our Supreme Court in Stitt & Co. v. Powell (1927), 114 So. 375 at 381 held —

" 'The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit. Thus a promise to pay additional compensation for the performance by the promisee of a contract, which the promisee is already under obligation to the promisor to perform, is without consideration.' 13 C.J. 353, par. 209.

" 'The rule holding a person in a fiduciary capacity to the strictest accountability applies to agreements for increased compensation after the confidential relationship is commenced. Such an agreement, no additional services by the attorney being contemplated, is, in the absence of peculiar facts, without consideration and invalid.' 6 C.J. 737, par. 311; Marshall v. Dossett, 57 Ark. 93, 20 S.W. 810; Kahle v. Plummer (Tex. Civ. App.), 74 S.W. 786."

In the Stitt case after the relationship of attorney and client had begun and the attorney had entered upon the discharge of his duties, the client offered to pay a further sum if the attorney succeeded. This was held to be without consideration and, as in so many of the cases involving an attorney-client relationship, the opinion referred to the attorney's fiduciary capacity, imposing the highest degree of care for the client's interest. See also State v. Snyder, 136 Fla. 875, 187 So. 381; Deal v. Migoski, Fla. App. 3, 122 So. 2d 415.

Miller cites authority that mutual consent is sufficient consideration, but this is only as to an executory bilateral contract and does not pertain in the factual situation here involving a modification or change in the agreement. 12 Am. Jur., Contracts, § 408, (p. 987). Neither can the client here be said to be estopped or to have waived her rights which had accrued under the original contract by reason of her acceptance of the two thirds of the settlement negotiated directly with Rassner, for there she maintained her consistent contention that the contract was 20% and it is for this very reason that this suit arises. Rassner has retained only 20% — $900. Any amount beyond this the defendant Mrs. Berg has steadfastly insisted upon. The benefits of Rassner's services which she may be said to have accepted are still no more than Miller had contracted to perform.

It further appears that Miller designated the particular manner of acceptance of his tendered new retainer, to-wit: by signing and returning. Where the mode of acceptance is expressly designated in an offer, it is essential to a binding contract that the acceptance be by the mode so designated. Strong & Trowbridge Co. v. H. Baars & Co., 60 Fla. 253, 54 So. 92; 7 Fla. Jur., Contracts, § 16, (p. 75).

Miller contends that there was an acceptance by silence and inaction resulting in an inference of assent. Such a principle is recognized in the law of contracts on the basis of estoppel and change of position resulting in substantial injury. 12 Am. Jur., Contracts, § 4, (p. 534). There cannot be said to be here, however, a change of position, Miller's obligation under the original contract — "regardless of whether or not it went into litigation" — remaining the same.

It is therefore ordered and adjudged that the motion for summary judgment of the defendant Miller be, and the same is, hereby denied, but the motion for summary judgment of the defendant Marlene Berg be, and the same is, hereby granted as to her cross-claim against Gershon Miller, as well as upon her counterclaim on the same cause of action against plaintiffs, for the sum of $600 tendered by plaintiffs, and that defendant Marlene Berg do have and recover of and from the said Gershon Miller and said plaintiffs said sum of $600, together with transfer filing fee of $12.50 by her paid, for all of which let execution issue.