## Faulk & Co., *et al.* v. Hobbie Grocery Co.

*Bill to Reform a Mortgage and Declare a Lien.*

(Decided April 16, 1912. Rehearing denied June 29, 1912. 59 South. 450.)

1. *Equity; Bill; Dismissal; Effect on Cross Bill.*—The effect of section 3118, Code 1907, is to change the rule formerly obtaining that the dismissal of an original bill took the cross bill with it, and the rule now is that a cross bill remains although the original bill has been dismissed; so while section 3093, Code 1907, requires a bill to be filed in the district in which the material defendant resides, the dismissal of the original bill will not affect a cross bill set up by one respondent against his co-respondent, although he is the only material respondent residing in the district where the bill is filed.

2. *Same; References; Exceptions to Report.*—Under rule 93, Chancery Practice it is within the discretion of the Chancellor to consider evidence not noted on exceptions to the Register's report.

3. *Evidence; Opinion; Expert.*—Members of the bar are competent as experts to give their opinion of the reasonable value of services shown to have been rendered by an attorney.

4. *Appeal and Error; Review; Finding.*—The finding of the Chancellor confirming the Register's report on sharply conflicting evidence will not be disturbed on appeal.

5. *Custom and Usage; Attorney's Fee.*—Where services of the same general character and extent are of such frequent recurrence among the legal profession that a certain basis for estimation is customary, evidence of such custom becomes admissible to show what is a reasonable attorney's fee.

6. *Partnership; Liability of Partners.*—Where a firm was by name a party to obligations, the debt was the joint and several obligations of all of the partners.

7. *Payment; Voluntary.*—Where on demand of the mortgagee the mortgagor paid the recording fee, the payment was voluntary, and no recovery can be had therefor.

8. *Mortgages; Foreclosure; Attorney's Fees.*—Where a mortgage provides for the payment of a reasonable attorney's fee in case it should be necessary to employ one in the collection of the debt, it is a contract of indemnity in favor of the creditor, and entitles his attorney to reasonable compensation, taking into consideration the nature of the employment and the skill and labor requisite to its discharge.

9. *Same.*—Where a note secured by mortgage provided for a reasonable attorney's fee, and the mortgage was foreclosed, an allowance of 10 per cent. on the amount of the face of the mortgage was not improper, as a matter of law, although after the proceedings were begun, part of the mortgage debt was discharged; such an allowance was not palpably excessive.

APPEAL from Montgomery Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Hobbie Grocery Company against T. S. Faulk, Ada E. Faulk, George Stuart, receiver in bankruptcy, and B. Frank, as trustee, to treat orator as having a lien of equal dignity with the other creditors in the mortgage on the lands, to reform and correct the mortgage so as to show that the same is and does stand as a security to orator, to foreclose, etc. Decree for complainant, and respondents appeal. Affirmed.

In July, 1907, T. S. Faulk & Co., T. S. Faulk, and Ada E. Faulk executed a mortgage on certain real estate situated in Geneva county to B. Frank as trustee, to secure the payment of an aggregate indebtedness of $8,368.81 due in specified sums to a large number of the creditors of T. S. Faulk & Co., including $2,876.50 due to Steiner, Lobman & Frank, a firm of which said B. Frank was a member. T. S. Faulk & Co. was a mer-

cantile partnership composed of T. S. Faulk and O. A. Faulk, doing business at Samson, Geneva county, Ala. T. S. Faulk and Ada E. Faulk resided in Geneva county, and O. A. Faulk resided in Pike county. B. Frank resided in Montgomery, and the Hobbie Grocery Company, a domestic corporation, had its residence and principal place of business in Montgomery. Default was made in the payment of said mortgage indebtedness on November 1, 1907. On November 9, 1907, a petition was filed by Steiner, Lobman & Frank and another creditor to have T. S. Faulk & Co. declared a bankrupt, and George Stuart was thereupon appointed as receiver of the property and assets of said firm. On December 11, 1907, the Hobbie Grocery Company filed its original bill against the parties above named, except O. A. Faulk, who was not made a party. The gravamen of the bill was that by agreement between T. S. Faulk, B. Frank, and complainant's representative, at a conference between them prior to, and looking to, the execution of said mortgage, the mortgage should have expressed that complainant's debt of about $700 due from Faulk & Co. was by it equally secured on the same terms as the debts of the other creditors, though it was to be evidenced by separate notes made directly to complainant; whereas in fact the complainant's debt was not mentioned at all in the mortgage. The prayer of the bill was as above stated, and also for an allowance of attorney's fee for complainant's lawyers. B. Frank, as trustee, filed an answer to the bill denying complainant's asserted equity for reformation of the mortgage and a sharing in its proceeds, and also filed a cross-bill against all the Faulks, Hobbie Grocery Company, and George Stuart as receiver, setting forth the mortgage and default in its payment, and praying for a decree of foreclosure with an allowance

of reasonable attorney's fees therefor. On October 5, 1909, the Hobbie Grocery Company dismissed its original bill of complaint, and on the same day T. S. Faulk filed a sworn plea in abatement of the cross-bill, alleging that the original bill had been dismissed, and that the appointment of George Stuart as receiver, etc., had been vacated by the federal court, and therefore those parties had no further interest in the subject-matter of the suit; that T. S. and Ada E. Faulk resided in Geneva county, and O. A. Faulk in Pike county; that the real estate involved—the subject-matter of the suit —was situated in Geneva county; and that there was left no material defendant residing in the district in which the bill was filed. Thereupon the cause was submitted for final decree on the plea in abatement, also on the cross-bill, cross-answers, and depositions offered by the cross-complainant. The chancellor overruled the plea in abatement, and decreed that B. Frank, as trustee, was entitled to the relief prayed for, and ordered a reference to the register to ascertain and report the amount due under the mortgage, reasonable attorney's fee, etc. The register reported that, at the time the mortgage was given to the attorneys for B. Frank for collection, there was due thereon $8,249.81; that after the filing of the cross-bill large sums were paid by Faulk & Co. to various of the secured creditors, leaving a balance with interest added to date of $3,894.-57; and that a reasonable attorney's fee for the solicitors of cross-complainant was 10 per cent. of the original amount, $824.98. The other material facts appear in the opinion.

TYSON, WILSON & MARTIN, and W. O. MULKEY, for appellant. The land was situated in Geneva county, and Stewart, although a proper, was not a necessary

party, and hence, the bill could not have been filed in Montgomery county if he had been the only respondent, but B. Frank, as trustee, was a material respondent in the original bill, and his residence in Montgomery county gave that court jurisdiction.—Sec. 3098, Code 1907; *Gay v. Brierfield Co.*, 106 Ala. 615; *Harwell v. Lehman*, 72 Ala. 344; *Ashurst v. Gibson*, 57 Ala. 284. B. Frank filed the cross-bill seeking foreclosure of mortgage on land in Geneva county, and the motion of the Faulks to dismiss it for want of jurisdiction should have been granted.—*Campbell v. Crawford*, 63 Ala. 392; *Harwell v. Lehman, supra.* Neither the Hobbie Company nor Stewart were material defendants, and hence, the provision of section 3118, Code 1907, is without application. The court erred in holding the plea in abatement insufficient.—*Eagle I. Co. v. Baugh*, 147 Ala. 613. The chancellor is not bound by rule 93, Chancery Practice, to consider evidence not noted. The defendant was entitled to recover as a credit the amount of recording fee.—*Barnes v. Moragne*, 145 Ala. 313; sec. 2082, Code 1907. This is also true of the fee advanced by the mortgagor to pay the attorney for preparing the mortgage. The court was in error in finding and allowing an attorney's fee of 10 per cent on the face of the mortgage as part of it had been paid.—3 A. & E. Enc. of Law, 465. The cross complainant was not entitled to attorney's fees at all, as Frank was only a trustee and had no interest in the mortgage debt.—*Bailey v. Butler*, 138 Ala. 153.

STEINER, CRUM & WEIL, for appellee. The court had jurisdiction and the dismissal of the original bill did not have effect of robbing it of its jurisdiction to proceed and determine the affirmative matters set up in the cross-bill.—Secs. 3093, 3118, Code 1907; *Ashurst*

*v. Gibson,* 57 Ala. 584; *Reeves v. Brown,* 103 Ala. 537; *Troy Fert. Co. v. Prestwood,* 116 Ala. 119; 54 N. W. 453; 94 N. W. 482; 152 U. S. 596; 184 U. S. 598.   The dismissal of the original bill did not have the effect of carrying the cross-bill with it, and the plea in abatement was properly held insufficient.—*Ables v. Planters Co.,* 92 Ala. 382; *Wilkerson v. Roper,* 74 Ala. 140.   The notes and mortgages provided for an attorney's fee and the finding of the register and chancellor as to the amount will not be disturbed.   The payment of the recording fee was voluntary and cannot be here recovered.

SOMERVILLE, J.—The office of the cross-bill, and its relation to the original bill, are thus stated by Chief Justice Stone in *Abels v. P. & M. Ins. Co.,* 92 Ala. 382, 386, 9 South. 423, 424 : "The general rule is that, when the original bill is dismissed, the cross-bill goes with it. This rule is based on the idea that the averments of the cross-bill and its subject-matter constitute simply a defense to the original bill, and therefore, having no individuality, no distinctive relief can be granted." But as said in *Wilkinson v. Roper,* 74 Ala. 140, "if the averments of the cross-bill relate to and spring out of the subject-matter embraced in the original bill, when such cross-bill prays affirmative relief, which is equitable in its character, and which requires a cross-bill for its presentation, if the cause in this condition is submitted for decree, then, although relief may be denied on the original bill, it is the duty of the chancellor to grant such relief on the cross-bill as its averments and the proof would justify, if they were presented in an original bill." "This rule, however," proceeds the Chief Justice in the *Abels Case,* "was originally applicable only when the relief asked in the cross-bill was direct-

ed against the complainant, and not against a codefend-
ant. * * * It was not until the statute was amend-
ed by the act approved January 22, 1885 (Laws 1885,
p. 91) the statute as amended now constituting section
3460 of the Code of 1896 (section 3118, Code 1907), that
relief could be had against a codefendant by a statutory
cross-bill as well as against the complainant in the
original bill; *and the same rules govern the filing of a
cross-bill against a codefendant as against the original
complainant.*" (Italics ours.)

The statute referred to provides that a defendant
may obtain relief against a party complainant or de-
fendant for any cause connected with or growing out
of the bill by alleging in his answer, and as a part there-
of, the facts upon which such relief is prayed." Its ef-
fect is, as declared in the *Abels Case,* to enlarge the
scope of the cross-bill, and to require an adjustment of
the rights of parties defendant inter se when proper-
ly presented to the court, regardless of the fate of the
original bill out of which the cross-bill sprang. Prior
to the statute such a cross-bill, seeking no affirmative
equitable relief against the original complainant, must
have fallen with the dismissal of the original bill. See
*Davis v. Cook,* 65 Ala. 617, 622. Under the statute re-
lief will be granted against a codefendant exactly as
though the cross-bill were an original bill, even though
the original complainant has no interest in the cross-
suit, and even though he abandons the whole proceed-
ing.

The object of the statute is to avoid a multiplicity of
suits, with the delay and expense which they inevitably
entail on the parties. Speaking to this effect, Justice
Haralson said in *Brickley v. Brickley,* 136 Ala. 554,
34 South. 947: "It would be unnecessary and vexa-
tious to require the defendant, in such a case, to bring a

new suit and go over the same matters, which could as
well be brought forward in the existing suit. The rights
of the parties could be adjusted in the one as well as in
bringing another suit, thereby avoiding inconvenience
and delay. Whatever can be done consistently with the
law to put an end to vexatious and irritating litiga-
tions ought to be done." It is insisted, however, that this
salutary purpose must fail in the present case for the
reason solely that with the dismissal of the original
bill, and the extinction of all interest in the subject-
matter of the suit in the Hobbie Grocery Company and
in Stuart, the receiver in bankruptcy, there remained
no material or proper parties defendant to the cross-
bill except the appellants; and that as these resided
without the chancery district in which the original and
the cross-bill were filed, and as the subject-matter of
the suit was land situated in another county, the chan-
cery court was without jurisdiction to further entertain
the cross-bill.

We cannot accede to this view. The court unques-
tionably had jurisdiction of the parties and the sub-
ject-matter by virtue of the original bill. The subject-
matter of the cross-bill was identical with that of the
original bill, and the relief sought by each was practi-
cally identical; the former seeking to share in a bene-
ficial trust, and the latter seeking to enjoy it exclusive-
ly. The cross-bill was connected with and grew out
of the original bill, and unquestionably by its filing the
court acquired jurisdiction of the parties and the sub-
ject-matter for the purposes for which it was filed. The
objection that at a later stage there remained no mate-
rial party resident in the district is purely technical
in its character, finds no support in the language of
the statute, and is opposed to its manifest policy. It is
denied also by the construction actually given to the

statute in *Abels v. P. & M. Ins. Co.,* 92. Ala. 382, 9
South. 423, for it can surely make no difference that the
original bill is voluntarily dismissed in advance of the
submission, instead of by the court *on the submission.*
We are satisfied that a jurisdiction once fully acquir-
ed in such a case was never intended to be made de-
pendent upon the will or discretion of the original com-
plainant, and that thereafter the question of mere ven-
ue is wholly immaterial, and indeed cannot arise.

The cases of *Eagle Iron Co. v. Baugh,* 147 Ala. 613,
41 South. 663, and *Eagle Iron Co. v. Malone,* 149 Ala.
367, 42 South. 734, cited and relied on by appellants,
are not at all pertinent to the question under discus-
sion.　They are cases at law, and are governed by the
venue statutes and rules of practice peculiar to law
courts, uninfluenced by the considerations above stat-
ed.　They merely hold that, when a suit for breach of
contract is filed against two defendants, only one of
whom is resident within the jurisdiction, and during
the trial the resident defendant is by amendment strick-
en from the complaint, the remaining defendant may
then plead in abatement to the jurisdiction of the court.
It is evident that any other rule in such cases would
enable a plaintiff by the shallowest of devices to evade
the laws of venue, and indeed to destroy the whole sys-
tem.

Analogy is wholly lacking.　Section 3093 of the Code
does provide that " the bill must be filed in the district
in which a defendant, or a material defendant, resides."
But this has reference to the original bill, and not to
the cross-bill, as to which when material defendants,
though nonresident, are already before the court and
within its jurisdiction, the court is authorized by sec-
tion 3118 to proceed and administer relief.

Exception is taken to the decree, in that it includes a personal judgment against O. A. Faulk, because his name was not signed to the notes or mortgage, and hence, it is argued, he was not personally liable. However, he was a member of the firm of T. S. Faulk & Co., and the firm was eo nomine a party to the several obligations. The debt of the firm was the joint and several obligation of all and each of its members, and each was liable to suit and judgment thereon.—*Freeman v. Pullen*, 119 Ala. 236, 24 South 57. There was no error as to this.

Exception is taken to the register's report in that credits were not allowed appellants for the sums of $35 and $14.65, paid by them to B. Frank, as trustee, on his requisition; the former to pay an attorney's fee for preparing the mortgage, and the latter to pay the recording fee.

As to the first item, Frank testified that it was expressly agreed between himself and T. S. Faulk & Co. that the latter should pay this fee. This agreement was expressly denied bv T. S. Faulk, who stated that it was to be allowed as a credit on the debt. On this state of the evidence we cannot hold the chancellor in error in confirming the disallowance of the credit.—*Pollard v. A. F. L. M. Co.*, 139 Ala. 183, 35 South. 767; *Jones v. White*, 112 Ala. 449, 451, 20 South. 527.

With respect to the second item, there was no agreement whatever as to its payment. Frank submitted by letter to Faulk & Co. the probate judge's bill, "for which we have sent him check. You can remit us direct for same." To which Faulk & Co. responded, "Inclosed please find check for $14.60 to cover recording fee."

It is, of course, true that the mortgagors were not bound, in the absence of any agreement, to pay the re-

cording fee. But, if they chose to do so on the mere demand of the mortgagee, it was a voluntary payment, for the recovery of which the law gives no remedy. The circumstances of the transaction afford no hint of such an expectation, and there arises from them no implication of a promise by the mortgagee to credit the amount thus paid on the mortgage debt. In fact, it would seem that the mortgagors deliberately intended to reimburse the mortgagee for what he had paid for them.

On the issue before the register as to reasonable attorney's fees to be allowed for conducting the suit for foreclosure of the mortgage, cross-complainant submitted the testimony of five attorneys who qualified as expert witnesses for that purpose. These witnesses all testified that a fair and reasonable fee for the services shown to have been rendered by cross-complainant's solicitors in and about the foreclosure of the mortgage would be 10 per cent. on the amount of the mortgage debt at the time it was placed in the hands of the solicitors for foreclosure.

In accordance with this undisputed evidence, the register found and reported that a reasonable fee was "10 per cent. of the amount of said mortgage indebtedness when placed in their hands for collection, or the sum of $824.98."

The chancellor allowed the fee as reported. The objection is that this allowance is erroneous as a matter of law, in that it is calculated on the basis of the amount due when foreclosure proceedings were begun, instead of the amount due at the time of the foreclosure decree.

The stipulation in the notes, which the mortgage was given to secure, is: Should it become necessary to employ an attorney in the collection of this debt we prom-

ise to pay all reasonable attorney's fees therefor." The mortgage itself provides that: "In case the mortgagee herein, his heirs, etc., see fit to foreclose this mortgage in a court having jurisdiction thereof, we will pay a reasonable attorney's fee therefor, which shall be and constitute a part of the debt hereby secured."

We are cited to no authorities on the proposition here presented, and we do not find that this court has ever had occasion to consider it.

In *Imler v. Imler,* 94 Pa. 372, it was said by Paxson, J.: "The obvious intention in this and like stipulations in instruments for the payment of money is that the creditor shall be indemnified for his reasonable expense of counsel fees in collecting the money. That is to say, where it becomes necessary to employ counsel to collect the money, the debtor shall be subjected to the expense thereof, not exceeding the agreed limit. It was never intended, nor can we permit, such a clause to be used to compel a debtor to pay attorney's commissions where the latter does not dispute the claim and pays at maturity. In such cases there is no necessity for the intervention of an attorney. Where, however, an attorney has been employed in good faith by reason of the neglect or refusal of the defendant to pay, the fact that the money has been paid to the attorney, without execution, does not relieve the defendant from his agreement to pay reasonable attorney's commissions, for the reason that the creditor's liability to the attorney has attached. The contract is one of indemnity, and if the defendant, by his neglect or refusal to pay, has subjected his creditor to the necessity of employing counsel, why should he not pay?

That such contracts are for indemnity only seems entirely clear.—*Tompkins v. Drennen,* 95 Ala. 463, 466, 10 South. 638. The question then in this case is: For

what amount was the mortgagee liable to his solicitors, there being no express agreement between them by which it was fixed? The general principle is every-where established that an attorney is in such a case entitled to reasonable compensation for his services, appropriate to his employment, rendered by him to his client.—*Humes v. Decatur, etc., Co.,* 98 Ala. 461, 470, 13 South. 368. In the estimation of their value many elements may be material for consideration, among which are the nature and value of the subject-matter of the employment; the learning, skill, and labor requisite to its proper discharge; the time consumed; the professional experience and reputation of the attorney; the weight of his responsibility; and the measure of success achieved.

The question of value is essentially an issue of fact, into which all of the elements named may enter, though no one of them alone can be of controlling influence.

It seems also to be settled by high authority that, where services of the same general nature and extent are of such frequent recurrence among the legal profession that a certain fee, or a certain basis for its estimation, has become customary and usual in such cases, evidence thereof is proper to show what is reasonable.—*Stanton v. Embry,* 93 U. S. 548, 23 L. Ed. 983; *Knight v. Russ,* 77 Cal. 410, 19 Pac. 698; *Vilas v. Downer,* 21 Vt. 419; *Nathan v. Brand,* 167 Ill. 607, 47 N. E. 771.

Witnesses who qualify as experts—that is, members of the legal profession shown to have the requisite knowledge and experience—may give their opinions as to the value of the services shown to have been rendered; but their opinions are not conclusive of the issue, though they should have their due weight.—4 Cyc. 1003.

Mr. Crum, one of the mortgagee's attorneys, testi-

fied that the notes and mortgage were given to his firm for collection about December 1, 1907, and that before proceeding to foreclose the mortgage by cross-bill they wrote to Faulk & Co. requesting payment of the debt, but received no response from them. He stated further that the usual and customary fee in such matters involving amouts such as this is 10 per cent. of the face of the mortgage indebtedness at the time it is placed in the hands of an attorney, and that this would be a reasonable fee for the services rendered by his firm in this case. He also stated that the amounts paid by the mortgagors to some of the secured creditors (aggregating about $4,000) were paid long after the cross-bill was filed, and after the bulk of their legal services had been rendered; that none of these sums were paid to them or to the mortgagee; and that they were not advised thereof until they obtained the information by correspondence with the creditors. On cross-examination he stated that the fact that half of the amount originally due was paid directly to the creditors, under the circumstances shown, would not affect or reduce the amount of the fee.

Appellants—the mortgagors—did not see fit to offer any testimony at all on this issue.

On the evidence presented to the register we cannot hold as matter of law that the partial payment of the debt, even to the mortgagee, after the employment of attorneys to collect it, and after proceedings for foreclosure had been inaugurated, would relieve the mortgagee pro tanto from his obligation to his solicitors; for, if so, it might be argued with equal propriety that such a payment of the *entire* debt would relieve him from paying any fee at all.

It may often happen that the mere fact of the employment of able counsel to collect a debt will morally

coerce its payment; and the fact that the debtor then pays the debt directly to his creditor ought not, either in law or in fact, to deprive an attorney of the just fruits of his employment. And, if it is customary for attorneys to charge and receive fees in such cases, the same as if the collection passed through their hands, that custom and practice may well be regarded as sufficient evidence of the reasonableness of the charge in question.

On the whole, we can see no propriety in disturbing the allowance as reported by the register and confirmed by the court in this case. It is supported by the evidence, and is not palpably excessive.—*Anniston L. & F. Co. v. Ward,* 108 Ala. 85, 18 South. 937.

Rule 93 of chancery practice does not forbid the chancellor to consider evidence not noted on exceptions to the register's report. It merely provides that he *need not* do so unless he chooses. Hence cross-complainant's omission to note counter testimony to cross-respondents' notations could not prevent the chancellor from considering all the evidence on the several exceptions noted.

The decree of the chancery court will be affirmed.

Affirmed. All the Justices concur.