176 So. 344

## WILLETT & WILLETT et al. v. FIRST NAT. BANK OF ANNISTON et al.

### 7 Div. 428.

Supreme Court of Alabama.

Oct. 14, 1937.

Crampton Harris, of Birmingham, for appellants.

578

.James F. Matthews, C. H. Young, and Leslie C. Longshore, all of Anniston, for appellees.

KNIGHT, Justice.

The only question here presented for determination concerns the amount of allowance awarded appellants for legal services rendered by them in the matter of the final settlement of the administration of W. W. Stringfellow, deceased, as executor of the last will and testament of Susie P. Stringfellow, deceased.

Susie P. Stringfellow, the wife of W. W. Stringfellow, died on the 7th day of February, 1920, supposedly leaving a large estate, consisting principally of stocks, bonds, and real estate. Her husband, the said W. W. Stringfellow, was named in her will as executor, and in event of his death, the First National Bank of Anniston, Ala., was named "as the executor or succeeding executor" of the will.

The will of the said Susie P. Stringfellow, deceased, was duly admitted to probate, and record, in the probate court of Calhoun county on March 20, 1920, and letters testamentary were issued thereon to the said W. W. Stringfellow on April 2, 1920.

By the terms of the will of said Susie P. Stringfellow, her husband, the said W. W. Stringfellow, was given the beneficial use of the major portion of the estate during his lifetime, with the right to make investments as he might see fit, and to use the income and profits therefrom for his own use. The testatrix directed that upon the death of her husband her residence in the city of Anniston should be conveyed to trustees and be used for a public hospital for the people of Anniston, and that the residuary estate should be held in trust by the First National Bank of Anniston, and the net income to be paid, one-third to her sister, Mrs. Minnie S. Hagemeyer, for life, and two-thirds for the maintenance of the hospital, and that upon the death of Mrs. Hagemeyer the entire income should be used for the maintenance of the hospital.

Upon the qualification of the said W. W. Stringfellow as executor of the will of his deceased wife, he took over the estate of his wife, and thereafter, and up to the time of his death, which occurred on December 11, 1932, he had entire charge and control of said estate. He filed no inventory of the properties, and kept no record of his acts and doings as such executor. True, certain of the properties were in a way so earmarked as to disclose that he held the same as a part of the trust estate. When he died, there existed great confusion and uncertainty as to what properties then in his possession belonged to the estate of his deceased wife, and what was his individual property.

The said W. W. Stringfellow died testate, but without leaving any surviving child or descendants, but leaving a wife; he having married again after the death of his first wife.

By his will, the First National Bank of Anniston, Ala., was named as executor, and duly qualified as such. Mrs. Nancy Cannon Stringfellow, the second wife, duly dissented from the will and elected to take dower in the lands and such portion of the personal estate as she would have been entitled to in case of intestacy, and, therefore, in the circumstances of the case, she was entitled to all the personalty, after the payments of the debts of the estate and cost of administration.

The First National Bank of Anniston, as executor of the will of W. W. Stringfellow. deceased, pursuant to the statute, section 5925, Code, undertook to make settlement of the administration of the said W. W. Stringfellow, as executor of the estate of Susie P. Stringfellow, deceased, and to that end, on August 21, 1933, filed its accounts, and statement of the heirs and legatees, for a final settlement of the administration of said W. W. Stringfellow as executor of said estate. But owing to the fact that the said W. W. Stringfellow had kept no books showing his dealings with the estate of his wife, and had filed no inventory of the properties of the estate which came into his hands, the account so filed was far from being accurate, full, and complete. A number of items of property received by said Stringfellow as such executor were omitted from the report and account, and this without any just cause of complaint against the said bank as such executor, or against its attorney. In fact, it seemed for a while well nigh impossible for this executor, with all the legal help that could be given it, to make a full, complete, and accurate report, due, as above pointed out, to the lax method pursued by the said W. W. Stringfellow in handling the estate of his deceased wife.

The First National Bank of Anniston, as executor of the estate of W. W. Stringfellow, in its said report and account advised the court, and very properly so, that its interest, as executor of the will of W. W. Stringfellow, deceased, was adverse to its interest as executor and trustee under the will of Susie P. Stringfellow, deceased, and prayed for the appointment of an administrator ad litem to represent the estate of said Susie P. Stringfellow, deceased, upon the final settlement of the administration of said W. W. Stringfellow, as executor under the will of his said wife. The court thereupon appointed Hon.

J. B. Holman, Jr., as administrator ad litem of the estate of said Susie P. Stringfellow, deceased. But aside from filing a purely formal contest of the several reports of the First National Bank of Anniston, in making settlement of the estate of Susie P. Stringfellow, deceased, the said administrator ad litem, so far as this record discloses, took no active part in the proceedings; nor did he employ counsel to handle the matter for him.

The First National Bank of Anniston, as the executor of the will of W. W. Stringfellow, deceased, appeared in every instance through its attorney, Hon. James F. Matthews. Of course, it was the legal duty of said First National Bank of Anniston, as such executor, to protect the interest of the estate of said W. W. Stringfellow, deceased. The connection of Mr. Holman as administrator ad litem of the estate of Susie P. Stringfellow, deceased, was purely titular, for, other than filing a pro forma contest, couched in a half dozen lines, it nowhere appears in the record that he made any effort, by himself or through another, to discover and bring into the estate any assets whatsoever. The estate of said Susie P. Stringfellow was, therefore, without independent representation by counsel, or otherwise.

In these circumstances, Mrs. Hagemeyer, who was vitally interested in seeing that the estate of Susie P. Stringfellow, deceased, was properly protected in the settlement of the administration of the estate by the said W. W. Stringfellow, former executor, and that all assets to which said estate was lawfully entitled were discovered and brought into the accounting, intervened, and employed Messrs. Willett & Willett and Rutherford Lapsley, attorneys at the Anniston Bar, and the law firm of Curtis, Mallet, Prevost, Colt & Mosle, of New York City, to represent her and the estate on said settlement.

It satisfactorily appears from the evidence in the cause that these attorneys employed by Mrs. Hagemeyer rendered valuable and effective service to the estate of Mrs. Susie P. Stringfellow, deceased, and that, as the result of much labor and the skillful handling of the case by these attorneys, the said estate was benefited to the amount of at least $50,000. While the appellees deny that the estate was benefited in the amount claimed by the said attorneys employed by Mrs. Hagemeyer, it is admitted that their services did in fact increase

the assets by approximately $30,000. For these services, it is not contended that these attorneys were not entitled to reasonable compensation.

Having performed the services for which they were employed, with the result as we have above stated, these appellants filed in the cause their petition for an allowance of attorneys' fees for the services rendered the estate, based upon the benefits accruing therefrom to the estate.

The court ordered a reference to the register to ascertain and report to the court the amount of attorneys' fees to be allowed the petitioning attorneys for services rendered by them, and which resulted in benefit to the trust funds of the estate of said Susie P. Stringfellow, deceased. The court ordered notice be given, as required by law, to all parties in interest, specifically naming them.

Pursuant to the above-stated order, the register held said reference, and reported that, after a careful study and consideration of all the testimony, he was of the opinion, and so recommended, that the sum of $12,500 was and is a reasonable and proper fee to be paid to the attorneys representing the contestants, and that the sum of $5,000 was and is a reasonable allowance for the executor's attorney for the services of said attorney in and about the matters stated in the report. Exceptions were filed by the First National Bank of Anniston, as executor, and other parties in interest to the allowance of a fee of $12,500 to petitioning attorneys, upon the ground that the amount was unreasonable and grossly excessive; and the trustees of the Susie P. Stringfellow Memorial Hospital also excepted to the allowance of a fee of $5,000 to the attorney for the First National Bank, as executor.

The court upon consideration of this report sustained the exception to so much of the report as fixed the fee for the petitioners, appellants, at $12,500, and reduced the fee to $5,000.

The court overruled the exceptions as to the fee fixed for executor's attorney, and in this particular confirmed the report.

After the rendition of the above decree, the petitioning attorneys, Messrs. Willett & Willett and Rutherford Lapsley, filed in the cause their petition in writing averring that they had, pursuant to their employment by Hagemeyer, conducted all proceedings in said cause contesting the several reports of the First National Bank, as executors of the will of W. W. Stringfellow, deceased, in the matter of the final settlement of said

W. W. Stringfellow, as executor of the will of Susie P. Stringfellow, deceased; that they had an interest in the suit; and they prayed to be allowed to intervene in the cause and be made parties to the suit for the purpose of prosecuting an appeal from the decree of the court fixing the amount of their fee.

The court granted the petition, allowed the said attorneys, Willett & Willett and Rutherford Lapsley to intervene, and they were made parties to the suit for the purpose of prosecuting this appeal.

The sole question, here presented and argued, relates exclusively to the correctness of the decree of the court in sustaining the exceptions to the report of the register, which fixed appellants' fee at $12,500 and in reducing said fee to $5,000. No contention is here made that appellants were not entitled to a fee for the services actually rendered by them, and which was of benefit to the trust fund.

All the evidence offered on the hearing, protesting the amount of the fee to which appellants were entitled, was opinion evidence. Of course, the register and the court had before them the entire record and proceeding in the cause, and so have we.

■ While the presumption on this appeal is that the register was right, yet it is competent for this court, in cases like the present, where the value of services rendered is the question for determination, to exercise its own independent judgment and determine the same upon a consideration of the whole case as developed on the record, without being bound to accept the opinion of the witnesses. Citizens' Light, Heat & Power Co. v. Central Trust Co. of Illinois et al., 200 Ala. 18, 75 So. 330; Andrews v. Frierson, 144 Ala. 470, 39 So. 512; Robinson v. Crotwell, 175 Ala. 194, 57 So. 23; Dent v. Foy, 210 Ala. 160, 97 So. 627.

■ We have carefully considered the entire record as it touches the issue here involved, and are reasonably satisfied that the appellants, by their efforts and skillful services, extending over a period of two or three years, were the efficient cause of bringing into the common trust fund not less than $50,000, in cash or its equivalent. The work involved required the utmost skill and labor, and the appellants have earned a fee (Section 6261), and in fixing the amount of the same consideration should be given to the results obtained, and the work and labor required. Of course, if their labors had been fruitless, then, un-

der the circumstances of the case and of their employment, they would not have any just claim against the trust fund.

Taking everything into consideration, which should be given weight in determining the amount of the fee, we have reached the conclusion that the court properly sustained exceptions to the report fixing appellants' fee at $12,500, but it fell into error in reducing the fee to $5,000. We are of the opinion that appellants are entitled to a fee of $8,500. But appellants as against their fee will be charged with the $1,000 heretofore paid them, leaving a balance to be paid them of $7,500.

Accordingly, the decree of the circuit court will be here corrected awarding appellants for their said services a fee of $8,500, to be paid to them by the executor of the will of Susie P. Stringfellow, less the $1,000 heretofore paid them. As corrected, the decree of the circuit court will be affirmed. It is so ordered.

Let the cost of this appeal be paid by the executor of the will of Susie P. Stringfellow, deceased, out of the funds of the estate.

Corrected and affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.