60 So.2d 47

**KING et al. v. KEITH.**

2 Div. 292.

Supreme Court of Alabama.

June 26, 1952.

Harry W. Gamble, Selma, and Sam M. Johnston and Johnston McCall & Johnston, Mobile, for appellant King.

Harold I. Baynton, Asst. Atty. Gen., Percy G. Fountain, U. S. Atty. So. Dist. Ala., Mobile, and Jas. D. Hill, Geo. B. Searls, and Joseph W. Laufer, Attys. Dept. of Justice, Washington, D. C., for appellant the Attorney General of United States.

John W. Lapsley, Selma, for appellee.

466

SIMPSON, Justice.

This record has been read and considered in general consultation and the court has concluded to this result.

The appeal challenges the decree of the circuit court, in equity, allowing appellee Keith fees and expenses for services rendered by him as an attorney at law to the estate of Alice DeVane King, deceased.

The appellants are Frederick D. King, individually and as administrator *cum testamento annexo* of said estate, and J. Howard McGrath, Attorney General of the United States, as successor to the Alien Property Custodian. Since submission, James P. McGranery, present Attorney General of the United States, has been substituted for McGrath, who recently resigned that office.

The court awarded appellee a fee of $40,-000 for legal services rendered the estate for the common benefit of the beneficiaries under the will for defending and establishing its validity as the last will and testament of said Alice DeVane King, deceased; $5,-000 as attorney's fees for legal services rendered appellant King as said administrator *cum testamento annexo* from the time of his appointment as such, to wit, June 15, 1948, to the time of Keith's discharge as the administrator's attorney May 13, 1950; and $5,187.39 for expenses incurred by appellee

incident to the rendition of such legal services; all of the aforesaid allowances being ordered credited with $7,500 previously paid by the administrator to appellee as expenses and $1,000 and $1,250 previously paid to appellee on attorney's fees.

To break down these figures, specifically the court was of the opinion that $40,000 was a reasonable attorney's fee for legal services rendered the estate in defending and establishing the validity of the will and in having the same duly admitted to probate; $5,000 as a reasonable fee for legal services rendered by said attorney to the administrator C. T. A., less $2,250 already paid; expenses in connection with those services of $5,187.39, requiring a refund of $2,312.61 from the $7,500 already paid the attorney for expenses.

The decree was rendered after a hearing of a petition filed by appellee against administrator King in which proceeding King, individually, and the Attorney General of the United States, as successor to the Alien Property Custodian, intervened and filed answers. Each phase of the decree is challenged as error. Cross-assignments of error challenge the part of the decree reducing the amount of the allowable expenses and ordering a refund.

A brief resume of the facts will be appropriate to illustrate the type of services rendered and the expenses incurred in that connection. Alice DeVane King, a native of Alabama, died in Heidelberg, Germany, June 21, 1941, owning a small farm in Louisiana and considerable real property located in Dallas and Hale Counties, Alabama. In 1940 she executed a will in Heidelberg, leaving her estate, except for some small minor bequests, in equal parts to two devisees, one, the appellant Frederick D. King, a resident citizen of New Orleans, Louisiana, and the other one Marie Schmitter, a resident and national of Germany. Subsequent to appellee's employment and during the progress of the proceeding, the Attorney General of the United States, pursuant to authority of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq. and various executive orders promulgated thereunder, executed vesting orders whereby Mrs. Schmitter's interest in the estate and

properties devised to her was expropriated and vested in him, as successor to the Alien Property Custodian of the United States. Appellant King, the other beneficiary, had retained appellee, a practicing attorney of Selma, Alabama, in 1941, soon after testator's death, to represent and protect his interest in connection with the matter and to have the will probated in accordance with the laws of Alabama. Thereafter appellee rendered various legal services in that connection, finally succeeding in obtaining the probate of the will and in having said King appointed as administrator with will annexed in June of 1948. On May 13, 1950, certain disagreements arose between administrator King and appellee and King discharged him as his attorney. Following his discharge, appellee filed his petition in the probate court of Dallas County for attorney's fees and expenses and thereupon, on petition of appellants, the cause was removed to the circuit court in equity where, after hearing, the aforementioned decree was rendered.

■ The original employment of appellee was, as stated, by King individually. The terms of this employment were subsequently reduced to writing, whereby it was agreed that the compensation of appellee should be contingent upon his establishing the will and obtaining its probate, the basis of such compensation being one-third of the gross value of the estate, plus expenses, including those incurred as travel, entertainment, telephone, lobbying, and such other costs as are ordinarily incurred in connection with such a probate proceeding; in the contract it was provided that in the event it should be necessary that the fees and costs be proved in court, King agreed to use every effort to have them approved on the basis of the contract. Appellee, however, is not claiming under this contract, but on the general principle that an attorney at law is entitled to a reasonable fee for legal services rendered by him in establishing the validity of a will which resulted in common benefit to the estate, together with all reasonable costs in that connection. Code 1940, Tit. 46, § 63; Kimbrough v. Dickinson, 251 Ala. 677, 39 So.2d 241; Wilkinson v. McCall, 247 Ala. 225, 23 So.2d 577; Penney v. Pritchard & McCall, 255 Ala. 13, 49 So.2d 782, 22 A.L.R.2d 1430; Brown v. Olsson, 254 Ala. 695, 49 So.2d 564.

From the period of his employment in June of 1941 until the probate of the will in 1948, the services rendered by this attorney were laborious, painstaking, persistent, skillful and unique. Briefly, they included contest of an application of one of Miss King's heirs for letters of administration; contest of an application to probate a previous will; contest of a bill in equity of another heir to sell land for division and to remove as a cloud on the title the purported will made in Germany; contest of heirs of the German will, which was finally defeated in a jury trial in the circuit court of Dallas County and that judgment affirmed on appeal to this court, reported in Johnston v. King, 250 Ala. 571, 35 So.2d 202; mandamus to the judge of probate to require him to accept the will for probate and grant letters of administration to King. By reason of the then existing war between the United States and Germany, the original German will could not be obtained and it was conceived by the attorney that under existing law there was no provision in Alabama authorizing the probate of a certified copy of the German will and, not knowing how long the war might last, he sought legislation to alleviate all doubt. It was therefore through the efforts of appellee that statutes of this state were amended to authorize the probate of such a copy and to toll the statute of limitation for the probating of such will pending the duration of the war. The successful efforts of appellee to that end required the attendance on two legislative sessions before amendments to existing statutes were finally adopted. Though the original will was eventually obtained and presented on trial, this could not have been foreseen pending the efforts of appellee in connection with his services in obtaining the passage of the amendments. The contest of the will was upon several grounds: incompetency, undue influence and illegal execution; and though it was held by this court that the case presented purely a legal question of whether the will was duly executed, it was necessary for ap-

pellee in preparation of the case for trial to be prepared to meet the other grounds of contest.

The details involved in the execution of this will are referred to in our decision in Johnston v. King, supra. Much research into the law was necessary to determine its status. Alice King, at the execution of her will, was paralyzed and could not speak. The attesting witnesses signed on a separate paper in a proceeding under German law. After considerable effort, the appellee succeeded in locating the attesting witnesses and after procuring an order of court, arranged to go with opposing counsel to Heidelberg, Germany, to take depositions of these German witnesses, which required an absence of about sixty days from his office in Selma. Before proceeding to Germany to take these depositions, he had already had prepared tentative interrogatories to each witness, containing several hundred questions. A former German lawyer was employed and these interrogatories were sent to Germany for the purpose of obtaining information as to the exact status of the execution of the will in Germany and to fully inform appellee with respect to the testimony of the witnesses. These depositions were returned and translated. Thereafter formal interrogatories were presented in the circuit court of Dallas County, where the will contest was pending; opposing counsel crossed these interrogatories at length and appellee and opposing counsel then proceeded to Germany for the purpose of taking the depositions of the attesting witnesses. Appellee was indefatigable in his efforts to accomplish the probate of the will. Toward the establishing of the will he obtained the cooperation and assistance of the attorneys for the Alien Property Custodian, who claimed the interest of Marie Schmitter, to whom had been devised the other one-half residuary interest of the estate. Numerous trips were taken to Washington in connection with this phase of the case and in getting the visas, passports, etc., for the trip to Germany and return and the procuring of the original of the will for use at the trial contest. Appellee testified that in connection with the rendition of these services he consumed of his time as follows: 1941, about thirty days; 1942, about forty-two days; 1943, about forty-two days; 1944, about sixty days; 1945, about sixty days; 1946, about sixty days; 1947, about sixty days; 1948, about one-half of his working time. It is on the basis of these services that the court declared appellee to be entitled to a fee of $40,000 for establishing and procuring the probate of the will.

After the will was probated, the services rendered the administrator until appellee's discharge as attorney included looking after the Alabama properties; collecting the rents; handling the estate for the administrator; making out income tax returns for the estate; settlement of the estate taxes, federal and state; assisting in having the will probated in Louisiana; trips to Louisiana and Washington in connection with estate matters; and filing of a bill in equity on behalf of the administrator looking toward a final decree for the payment of debts, costs and legacies. The income accruing from the estate during this period approximated $30,000. For these services the trial court allowed him a fee of $5,000.

The value of the estate was considerable and variously estimated by the witnesses and parties to the suit at from about $140,000 to about $272,000. A conservative estimate would be at least $175,000, having regard for the potential value as testified to by one experienced real estate agent who had appraised the Dallas County properties alone at $260,000 (infra). We summarize the various appraisals as follows:

| | |
|---|---:|
| C. W. Eastep, Selma real estate agent (witness for appellee)—Dallas County properties | $260,000 |
| Winston Withers, attorney of Greensboro of experience in land values (witness for appellee)—Hale County properties | 8,500 |
| Cloughton Johnson, Selma real estate agent (witness for appellant)—Dallas County properties | 138,000 |
| Chris B. Heinz, Selma real estate agent (witness for appellant)—Dallas County properties | 140,000 |
| Louisiana property | 3,500 |
| King's estimate of value of Alabama properties | 189,000 |

Keith's expression of value of Alabama properties as indicated in testimony .................. 150,000

Appraisal of properties of Alien Property Custodian as indicated in correspondence ............ 167,000

The following attorneys testified as witnesses for appellee as to the value of the legal services rendered as follows:

Hon. Richard T. Rives, attorney of Montgomery, now federal circuit judge,—Fee for establishing will, 30% of gross value of estate or $40,000, whichever should be smaller, hence ................ $40,000

Fee for subsequent services rendered administrator..... 5,000

Hon. William Logan Martin, attorney of Birmingham, Alabama, formerly a circuit judge and Attorney General of Alabama—Fee for establishing will and for other services rendered by appellee exclusive of any other fee previously paid.....⅓ of gross value of estate

Edgar A. Stewart, of opposing counsel in the will contest—Fee for establishing will and for other services rendered thereafter to the administrator.....⅓ of gross value of estate

McLain Pitts, attorney of Selma, Alabama—Fee for establishing will.....⅓ of gross value of estate

Fee for subsequent services rendered administrator..... 7,500

Royal Randolph Smith, attorney of Selma—Fee for establishing will and subsequent representation of administrator.....⅓ of gross value of estate

Keith, appellee—Fee for establishing will.....⅓ of gross value of estate

For subsequent services to administrator..........8,000 to 10,000

In addition to the foregoing testimony, we have before us (1) the written statement executed by King for himself and as attorney in fact for Schmitter agreeing to a fee for probating the will of one-third of the gross value of the estate and his covenant in his contract to use his efforts to have the contract approved by the court on that basis; (2) schedule of fees of the Dallas County Bar Association providing for a minimum contingent fee of an amount equal to twenty-five per cent of the amount of recovery. Canon 12, American Bar Association's Ethics, infra.

Appellants introduced no testimony with respect to the attorney's fees or the reasonable value thereof.

The trial court on the basis of this evidence rendered the decree accordingly, stating that "The Presiding Judge (writer of this decree) in addition to considering the evidence of qualified attorneys, who testified orally with respect to the reasonable value of the legal services rendered by petitioner, has also called to his aid his own value of such services."

The question of concern then: Should we—or are we rightly authorized to—disturb that decree on the basis of the record presented? We think not.

That the services rendered were in good faith and inured to the common benefit of the estate and the beneficiaries under the will so as to authorize the allowance of attorney's fees and costs to be taxed against the estate in accordance with the authorities, supra, there can be no doubt.

■ That appellee was also entitled to a reasonable attorney's fee for legal services rendered to the administrator after his appointment until discharged as such attorney, such fee to be taxed as a part of the costs of the administration, is also without question. Code 1940, Tit. 61, §§ 377, 379, 389; Tit. 46, § 63.

■ Likewise, that the court was authorized to make the allowance of attorney's fees payable directly to appellee for services rendered by him for the common estate is not subject to controversy. Code 1940, Tit. 46, § 63; Brown v. Olsson, supra; Wilkinson v. McCall, supra; Keith & Wilkinson v. Forsythe, 227 Ala. 555, 151 So. 60.

■ And, of course, the appellee as such attorney, under the circumstances disclosed, would be entitled to reimbursement for ex-

470

penses incurred by him incident to the rendition of those services. 7 C.J.S., Attorney and Client, § 180, page 1046.

■ The guiding rule in the fixation of attorney's fees is that the trial court, in connection with a consideration of the opinion evidence proffered by qualified experts, may call to his aid his own estimate of the value of such services and the amount of the allowance rests within the sound judicial discretion. Dent v. Foy, 214 Ala. 243, 107 So. 210.

■■ And though, in reviewing the propriety of the fixation of such fees by the lower court, this court will be guided by its own judgment upon a consideration of the whole record, Frazer v. First National Bank of Mobile, 235 Ala. 252, 178 So. 441, 126 A.L.R. 1; Dent v. Foy, supra, we make such review with a presumption in favor of the ruling of the court below and will not set aside its decree unless we are convinced that that court abused the discretion wisely vested in it.

In Steiner v. Steiner, 254 Ala. 260, 266, 48 So.2d 184, 189, we had this to say on the subject:

"We have carefully considered the allowance of counsel fees for services in the trial court. * * * It is evident that considerable time and effort has been expended in the preparation and conduct of the case. Qualified and competent members of the Birmingham Bar testified that the services were worth not less than $10,000 nor more than $15,000 under the circumstances of the case. No one testified to the contrary. The court no doubt took all this in consideration in connection with the situation between the parties and especially the value of such services in its jurisdiction. *Such allowance rests in the sound judicial discretion of the trial court which we are not willing to say has been abused. * * * *"* (Emphasis supplied.)

Again, in Dent v. Foy, supra, 214 Ala. 250, 107 So. 216, the court, speaking through Mr. Justice Bouldin, said:

"When a presiding judge comes to hear, for example, a motion for a new trial upon the ground that the verdict of a jury fixing attorneys' fees is excessive or inadequate, surely the trial court may likewise consult his own knowledge of the fair value of the services. His special knowledge of such matters would entitle his finding to due consideration by this court."

■ In estimating the value of legal services, following are among the elements material for consideration: (1) the nature and value of the subject matter of the employment; (2) the learning, skill and labor requisite to the proper discharge of that employment; (3) time consumed; (4) the professional ability, experience and reputation of the attorney; (5) the weight of his responsibility; (6) the measure of success achieved; (7) the reasonable expenses incurred. T. S. Faulk & Co. v. Hobbie Grocery Co., 178 Ala. 254, 59 So. 450; Dent v. Foy, supra; Humes v. Decatur Land Improvement & Furnace Co., 98 Ala. 461, 13 So. 368; Frazer v. First National Bank, supra.

■ In the light of the guiding principles, after a considerate and painstaking study of the record, we have become convinced that the trial court did not abuse his discretion in the allowances aforesaid. His intimate knowledge of the case especially advantaged him to make up a correct decision of the question and for us to disturb it would, in our opinion, be without warrant.

Counsel for appellant King asseverates in argument what in his opinion would be a reasonable attorney's fee for the services rendered in the probate of the bill, but neither he nor anyone else furnished any testimony to that effect on the trial and we are in disagreement with his premise that any other lawyer of reasonable ability could have accomplished the same results with the allowance of a less fee, *a fortiori* the allowed fee is excessive. Without doubt, there are other lawyers of equal capabilities who might have achieved the results obtained had they been employed and addressed themselves to the task; but the record impresses us that appellee exhibited rare persistence and assiduous attention to this mat-

ter to accomplish the end result. This argument of learned counsel is unconvincing.

Nor are we impressed with the argument that the contingent nature of the employment of appellee by King should be altogether laid out of view in determining the amount of the allowance of the will fee. It is a recognized rule that the certainty or contingency of the compensation affects the amount of a fee, a much larger one being allowable in the latter case. Canons of Professional Ethics of American Bar Association, No. 12; Fee Contracts of Lawyers, by Earl W. Wood (Prentice-Hall, Inc., 1936), § 36, p. 90; 6 Corpus Juris 752, § 331; 7 C.J.S., Attorney and Client, § 191; F. L. Stitt & Co. v. Powell, 94 Fla. 550(6), 114 So. 375; Ex parte Wilkinson, 220 Ala. 529, 126 So. 102; Denson v. Caddell, 201 Ala. 194, 77 So. 720; Willett & Willett v. First National Bank of Anniston, 234 Ala. 577, 176 So. 344.

And although the claim for attorney's fee for establishing the validity of the will is rested on a *quantum meruit* rather than on the contract with King, in the circumstances shown the distinction would seem to be of little moment inasmuch as the right and measure of allowance depended on results obtained in behalf of the common estate. Farmers' Bank & Trust Co. v. Borroughs, 217 Ala. 97(8), 114 So. 909. The exigencies would have been the same in either aspect —win all or lose all, the chances of any reasonable amount of compensation being entirely contingent upon the successful outcome of the case.

We are not unmindful that pending the establishment of the will and the appointment of King as administrator C.T.A., appellee was the administrator *ad colligendum,* stood in the relation of trustee of the estate, and that a fiduciary is in duty bound to conserve the trust estate and to act with care and prudence with respect to expenditures. Henry v. Henry, 103 Ala. 582, 15 So. 916; Clark v. Knox, 70 Ala. 607; Mitchell v. Parker, 227 Ala. 676, 151 So. 842. But adherence to the axiomatic precept would not deny appellee his just compensation for the valuable services rendered during the seven years of effort toward the will's probate.

Nor can we interpret the record as indicating that a large part of the services embraced in the allowance for establishing the will had been previously compensated for by former orders of the court. Our view is that the allowances previously ordered were for those usual services arising from the handling of a rather large estate by the administrator *ad colligendum.* Indeed, the court so construed it in various orders of settlement when fees and expenses were allowed by including in such orders authorization for the special administrator to make the disbursements "without prejudice to the allowance of further compensation." The only allowance which did not comprehend such a proviso was the $1,000 fee authorized to be paid to appellee pending his trip to Germany and which the court in the final award charged back to appellee, along with a later $1,250 fee paid by administrator King after the will's probate, mentioned hereinbefore.

We are likewise in disagreement with the learned Assistant Attorney General of the United States that due to the services rendered by his office in connection with the probate and other proceedings, the fee should be reduced. While that office exhibited earnest and cordial cooperation in assisting appellee in the performance of some of his duties incident to the representation, the over-all responsibility was entirely his, as was his knowledge and experience as a practitioner of the Alabama Bar. Our view is that the services rendered by the government department should in no wise have diminished his compensation.

The allowance of the subsequent fee for representing the administrator *ad colligendum* is governed by the same principles. The lowest estimate of the value of such services testified to by any witness was the sum allowed by the court. The court was familiar with the services performed incident to the representation and in the light of the favorable presumption attending his ruling on this question, we likewise cannot say that he abused his discretion in its fixation.

The final criticism of appellants is that the allowance for expenses incurred in connection with the rendition of the legal services was unauthorized and excessive. This contention seems to be grounded on the theory that the specific items were not sufficiently identified or vouchers presented to support the account. Concededly, the method contended for by appellants is that customarily required. The circumstances with reference to this particular estate, however, were not usual and appellee was entitled to a reasonable allowance to cover his expenses incident to the services rendered. 7 C.J.S., Attorney and Client, § 180, page 1046. The account presented amounted to $10,374.78, with the credit previously paid of $7,500 mentioned hereinabove. The court thought the amount claimed to be excessive and ordered a refund of $2,312.61 and charged this amount back to appellee, thus reducing the total claim filed by one-half and only allowing expenses for the entire period in the amount of $5,187.39. It would extend this opinion unduly to take up each item of the expenses claimed and determine the correctness vel non thereof. We entertain the view, however, that there was sufficient evidence before the court to establish prima facie that the amount as finally allowed was proper and a reasonable sum for such expenses. There was no countervailing evidence adduced by appellants to dispute any of the items claimed. So considered, to disallow the claim of expenses would be entirely unauthorized.

The cross-assignments of error by appellee complaining of the reduction in the allowance of expenses claimed is likewise without merit.

We find no error to reverse.

Affirmed.

All the Justices concur except GOODWYN, J., who dissents as to the allowance of any amount for expenses.

GOODWYN, Justice (dissenting).

I concur in the majority opinion, except that part which approves the allowance for expenses.

The revised statement of expenses is in the amount of $10,374.78. The trial court allowed $5,187.39, which is exactly one-half of that claimed. The decree does not disclose how this amount was arrived at, other than the expression in the court's opinion "that the claim of petitioner for expenses incurred by him in connection with the rendition of said services in the amount of $10,374.78 is excessive, and that only one-half of said amount, namely: $5,187.39 should be approved and allowed."

The appellants complain that there is no legal evidence to support the award. Appellee insists that there is no basis for reducing the claim; that under the proof he is entitled to all of it or none. As stated in brief of appellee's counsel: "If the proof offered by appellee in an effort to recover the unpaid balance of his expenses was insufficient, it appears that the court would have been justified in denying such recovery."

There was considerable evidence offered in support of the attorney's fee, as indicated in the majority opinion. But the same cannot be said with respect to the expenses. The evidence as to expenses consists of a verified statement of account and oral testimony of appellee. There were no vouchers or other written evidence filed or presented in support of the account. Moreover, its correctness was denied by appellants.

The statement covers the period from 1941 to April 19, 1950. For each of the years 1941 through 1944 there is a showing of "estimated expenses" totaling $600 and embracing such items as "telephone $25.-00", "trip to New Orleans in May $100.00", "10 trips to Montgomery during April, May and June $100.00". For the period from January 22, 1945, through April 19, 1950, there is a generalized tabulation under five headings, as follows: "steno.", "lawyers", "trips", "telephone and telegrams", and "misc." Under the heading "steno." there are forty-seven separate entries, totaling $1,338.26; under "lawyers", eighteen entries, totaling $1,370.30; under "trips", sixty-one entries, totaling $2,980.-06; under "telephone and telegrams", fifty entries for a total of $792.34; and under "misc.", thirty-eight entries totaling $518.-82. There is also a separate tabulation of "accrued expenses" totaling $2,775, as

follows: "W. D. Partlow, Jr., $1,550.00"; "Orville Rush $600.00 (facilitating depositions & passport)"; "Winston Withers $125.00 (Hale County abstract)"; "use of automobile (approx.) $500.00."

If appellee is entitled to recover his expenses, on the basis of a separate account therefor, he certainly should meet the proof required of the administrator in settling his account. For it is noted that the administrator advanced to appellee $7,500 on expenses, and the court, in its decree, credited the allowance of $5,187.-39 on this advance. The effect, then, was to approve such expenditure by the administrator to the extent of the allowance. Although the administrator may be allowed his "actual expenses," Code 1940, Tit. 61, § 377, he "must produce satisfactory proof of the correctness of each item on the credit side of the account". Tit. 61, § 302. And this latter section places on the administrator the burden of proving the correctness of the items of credit, where objections are filed thereto. Hines v. Baldwin, 211 Ala. 322, 100 So. 466.

I have carefully examined the record and have read the testimony offered in support of the expense account. I am not persuaded that appellee has met the burden which is his of proving the correctness of the account. Suffice it to quote his testimony as elicited by his counsel:

"Q. Did you receive any reimbursement for any expenses you incurred? A. Yes, sir, $7,500.00.

"Q. Did you file an account of expenses? A. Not at that time. I was simply estimating expenses.

"Q. Have you since filed an account of expenses? A. Yes.

"Q. What is the balance due on expenses? A. The expenses enumerated are those I know about. Quite a bit of money, I kept no record of. This is what I have a record of, except '41 thru '45 I didn't have a separate tabulation on that. I have a figure here of $10,374.78, leaving a balance of $2,874.78.

"Q. Is that a revised or corrected statement of those expenses? A. Yes, sir.

"Petitioner offers in evidence petitioner's Exhibit No. 1, which is the same as the exhibit to petition set forth on pages 7 to 14 inclusive of this transcript, except that there is a credit of $385.00 as a refund on trips which reduced the total expenses for trips to $2,980.06. * * *

"Q. Are there some changes? A. Yes, good deal less. * * *

"Q. I will ask you if you have prepared an outline or statement of services rendered by you for which you claim compensation? A. Yes, but you haven't finished that last question. * * *

"Q. With reference to those expenses set out in your account, were they all spent by you incidental to your defense of these various matters and litigation and obtaining the amendments to laws and to traveling expenses for the estate on those different trips? A. It would be hard to draw a line of traveling expenses, what constitute necessary expenses. You're working on a case, and the time you're going to a football game or nightclub, well—

"Q. Did you attempt to separate it? A. No, sir.

"Q. Have you done so in your revised statement? A. No.

"Q. Were those expenses of the estate? A. I'd rather have the court pass on that. I don't know.

"Q. Have you set out each item? A. Yes, sir, but when I take a trip I don't say what it cost to go to a restaurant or go to a football game. All I know is what the trip cost.

"Q. So you just charge the entire amount? A. Yes, sir, I don't mind paying my part of it.

"Q. Have you books and records and vouchers to substantiate those items? A. I have from 1945. On

back of 1945 it is just a question of picking out an item here and there that I could positively identify.

"Q. You think you spent far more prior to that time than you itemized? A. I know I did.

"Q. Were your expenses reasonably incurred in the interest and on behalf of this estate? A. That would be a hard question to answer fairly.

"Q. What part would there be if you eliminated the pleasure part? A. I would have to do some thinking about that."

I would reverse and remand as to the allowance for expenses.